2024 IL App (2d) 240012-U
No. 2-24-0012
Order filed March 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2473 |
| PARIS L. LEFLORE, | ) ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court's detention order is affirmed, where the State met its burden to show that no conditions would mitigate the real and present threat that defendant poses to the community.

¶ 2   Defendant, Paris L. Leflore, requests that we vacate the circuit court's order granting the State's petition to deny him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff.

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Criminal Code,

Jan. 1, 2023) (amending various provisions of the Act); *Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Specifically, defendant contends that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate defendant's threat to the community. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged on November 14, 2023, with possession of a stolen firearm, Class 2 (720 ILCS 5/24-3.8(a) (West 2022)); unlawful use or possession of a weapon by felons, Class 3 (*id.* § 24-1.1(a)); unlawful sale or delivery of firearms, Class 3 (*id.* § 24-3(A)(d)); and possession of a controlled substance, Class 4 (720 ILCS 570/402(c) (West 2022)).

¶ 5      The next day, the State filed a verified petition to detain defendant pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act. The State alleged that defendant was charged with a detainable offense and an offense that was not eligible for probation and that his pretrial release posed a real and present threat to the safety of any person or the community. *Id.* §§ 110-6.1(a)(1), (6)(F). It further asserted that defendant's criminal history included, *inter alia*, a 2021 conviction for unlawful possession of a controlled substance and he was presently on probation in case No. 21-CF-39 for attempt aggravated unlawful use of a weapon.

¶ 6      A hearing was held that same day and the court heard argument on the State's petition. The State noted that defendant was charged with a detainable offense, a nonprobationary offense, and

_____

has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act"; however, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

it was proceeding under the Act's dangerousness prong. It argued that the police synopsis supported its argument that defendant was a danger to the community. Upon the State's request, the court examined the police synopsis in this case and the docket sheet from defendant's prior case (case No. 21-CF-39).

¶ 7 Specifically, the synopsis related that, on November 7, 2023, a felon named Calvin Cooke told Detective Linden that his friend, "a black dude named Paris," had a .22-caliber Ruger for sale for $600. Detective Linden provided Cooke with $600 and took him in an undercover vehicle to a residence at 1227 Amanda Circle in Elgin. Detective Linden was instructed to park at another address, and Cooke walked back to the residence alone. Detectives observed Cooke meet with defendant in a parking lot. Defendant was positively identified based on his previous booking photographs. Detective Linden then watched Cooke lean into the driver's side rear passenger door of a 2011 Mazda (registered to Leflore-Taylor at another address) and retrieve a bag containing what appeared to be a rifle. Cooke and defendant were observed talking and then Cooke returned to the undercover vehicle with the bag. Detective Linden opened the bag and discovered a .22-caliber Ruger long rifle with serial No. 100596. After running the serial number through police databases, Detective Linden discovered the firearm was reported stolen from Naperville.

¶ 8 Seven days later, police observed defendant leave the same residence and enter a silver Chevrolet truck. Defendant was, thereafter, arrested. During the arrest, police discovered a plastic baggie containing a brown powdery substance on the truck's passenger-side floorboard. The substance later field-tested positive for heroin and fentanyl and weighed approximately 0.8 grams.

¶ 9 The State argued that defendant was a felon at the time of the firearm sale, thus, there was no reason for him to possess a firearm, let alone be selling a stolen firearm to another felon. Moreover, the State asserted that defendant's behavior showed a "wanton disregard for the norms

of society" and put the community in danger because he was circumventing the laws put in place to regulate firearm ownership and sales. Finally, the State argued that no conditions of release would mitigate the real and present threat that defendant posed to the community because defendant has been placed on conditions by the court and showed that he could not abide by those conditions.

¶ 10    Defense counsel argued that defendant's criminal history was primarily remote and evinced substance abuse issues, defendant had full-time employment, and he has a permanent address in Aurora. Moreover, defendant's conviction in case No. 21-CF-39 was mitigated to an inchoate offense because there was a question as to his actual knowledge of the presence of a firearm in a vehicle he was driving at the time of his arrest. As to the present case, defense counsel argued that there was an issue regarding defendant's identification in this case: defendant does not reside at the address listed in the offense—his daughter does, he has a son with whom he shares a name and who does reside at that address, the 2011 Mazda listed in the synopsis is owned by defendant's son, and Detective Linden's view was obscured during the alleged transaction. Cooke, however, did contact defendant to pay him money that was owed, which was not equal to the sum of the firearm.

¶ 11    Additionally, defense counsel argued that there were less restrictive conditions that could be imposed, especially considering that defendant did not pose a safety risk to a specific person and he was denying possession of the weapon at issue here. Defendant did not have a history of violent offenses, and the firearm at issue was being used as a material good, not as a weapon of violence.

¶ 12    Based on the proffered evidence, the circuit court ordered defendant's continued detention. The court noted that defendant was charged with two detainable offenses and that the State proved

by clear and convincing evidence that the proof was evident and presumption great that defendant committed those offenses. Additionally, the court found that the State proved by clear and convincing evidence that defendant posed a real and present to the safety of the community because he (1) was not licensed to sell firearms, (2) sold the firearm to another convicted felon, and (3) was not entitled to possess a firearm at the time of the sale. Moreover, the court determined that there was clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat defendant posed to the safety of the community because ordering defendant not to possess a firearm would not ensure his compliance and electronic home monitoring would not preclude defendant from obtaining and selling firearms. The circuit court issued a written order on November 15, 2023, memorializing these findings. Defendant did not appeal.

¶ 13    On December 15, 2023, defense counsel presented additional evidence and asked the court to consider whether defendant's continued detention was the least restrictive condition. At the hearing, defense counsel argued: there was no evidence to support that the recovered firearm was ever used, defendant's criminal history was primarily remote and nonviolent, there was no allegation that defendant was a danger to a specific individual, defendant's identification by police was vague as they did not obtain the firearm directly from defendant, there was no evidence showing that Cooke was a felon, defendant was not such a danger to the community that police immediately arrested him (he was arrested seven days after the alleged firearm transaction), defendant had full-time employment and a stable living situation, and defendant is a diabetic and not receiving appropriate treatment at the jail. Overall, defense counsel asserted that the "dangerousness component is not being presented sufficiently by the State to require the most restrictive condition which is incarceration."

¶ 14    The court clarified that it was not reconsidering the dangerousness finding, only considering whether there were any less restrictive conditions which would mitigate defendant's dangerousness. The State then argued that the jail is sufficiently equipped to deal with defendant's health concerns, defendant showed that he was unable to comply with the court's conditions by committing the present offenses while on probation, defendant's living arrangements with his wife or daughter would not provide any additional security since he committed the offenses while at his daughter's residence, and defendant knew that he was prohibited from possessing a firearm because of his prior conviction.

¶ 15    The court, ultimately, found that there were no less restrictive conditions it could impose that would mitigate defendant's real and present threat to the safety of the community. Specifically, the court noted that defendant did not allege which, if any, required medical treatments he did not receive in the jail; instead, it found there was ample medical staff at the jail equipped to aid defendant. Moreover, the court found that the requested conditions of release—reporting to pretrial services and/or random drug testing—would not address defendant's dangerousness to the community. Defendant had been given similar probation terms, and he committed the instant offense while on probation; thus, the terms did not adequately address the court's safety concerns. Additionally, the court determined that house arrest and electronic home monitoring would not address its safety concerns because these terms would not prevent defendant from selling firearms, especially here where the firearm sale occurred outside a residence connected to defendant.

¶ 16    Thereafter, defendant timely appealed, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On February 22, 2024, he filed a memorandum in support of his appeal, and, on March 15, 2024, the State responded.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant argues that the State failed to meet its burden of proving that no condition or combination of conditions would mitigate any safety threat he posed to the community. As to why no conditions could mitigate any potential threat defendant posed to the community, defendant asserts that the State presented only conclusory statements regarding his criminal history and the nature of the offense. He requests that we reverse his detention order and remand for a new hearing. We disagree.

¶ 19    Our standard of review is twofold. We review the circuit court's factual findings regarding the prerequisites to detention under the manifest-weight-of-the-evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence only where the finding is unreasonable. *Id.* We review for an abuse of discretion the circuit court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion occurs only when the circuit court's decision is unreasonable. *Id.*

¶ 20    Of note, the court's November 15 dangerousness finding was not appealed. Accordingly, the court, at defendant's subsequent hearing, was reviewing whether defendant's continued detention was necessary to avoid a real and present threat to the safety of the community based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(i-5) (West 2022). In making its determination about whether conditions short of detention could mitigate the danger, the court must consider several factors, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) defendant's history and characteristics, including whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other release; and (4) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id*. § 110-5(a). Moreover, it is incumbent on a court to consider not just whether conditions of release exist that would mitigate the safety threat to the

community, but also to consider whether defendant is likely to comply with such conditions. *Id.* § 110-2(a), 5(a).

¶ 21    Defendant argues that his criminal history and the inherent nature of delivering a firearm is insufficient to prove that there are no less restrictive conditions of release that would mitigate defendant's safety risk to the community. Defendant cites to *People v. Stock*, 2023 IL App (1st) 231753, for the proposition that the State fails to meet its burden of proof regarding the viability of less restrictive conditions by only making conclusory statements that no conditions would mitigate the threat posed by defendant. *Id.* ¶ 16. However, *Stock* is inapposite. In *Stock*, the State failed to present *any* evidence regarding conditions of release. It relied only on the basic elements of the offense as the backbone for its argument supporting defendant's detention. *Id.* This simply is not the case here.

¶ 22    At the outset, the State provided evidence, not mere conclusory statements, to show that no less restrictive conditions would mitigate defendant's risk to the community. The State's proffer from the December 15 hearing reflected that, (1) defendant faced medical challenges within the jail, however, the jail was generally equipped to deal with diabetic issues; (2) defendant's criminal history was primarily remote and nonviolent, but he was required to report to probation (in case No. 21-CF-39) at the time of this offense; (3) defendant's living accommodations with his wife or with his daughter would not provide any additional security since he allegedly committed the offenses while at his daughter's residence; and (4) defendant knew that he was prohibited from possessing a firearm because of his prior conviction.

¶ 23    The court considered the medical issues defendant was facing but, without specifics, it noted that the jail has the medical staff and care available for defendant. Next, the court found that reporting to pretrial services and/or requiring random drug screenings would not sufficiently

address defendant's threat to the community because defendant had a history of noncompliance with court orders, considering he was on probation at the time of this offense and reporting to probation did not curtail the commission of the current offenses. This finding was reasonable. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33 (where the defendant was on parole and failed to comply with the conditions placed upon him, this "demonstrated history of refusing to abide by conditions of release" satisfied the State's burden of showing no less restrictive conditions were appropriate and the circuit court did not err in so finding). Finally, referencing house arrest and electronic home monitoring, the court reasonably determined that the offenses were alleged to have occurred outside a residence associated with defendant and, thus, imposing house arrest or electronic home monitoring would not address the court's safety concerns or prevent defendant from selling firearms from the same residence.

¶ 24 Overall, the circuit court's determination was supported by the State's recitation of defendant's criminal history, specifically his noncompliance with the terms of his probation in a firearms offense; the police synopsis; and the jail's capability to adequately provide medical treatment, especially for diabetes. In sum, it was not unreasonable for the court to find that no condition or combination of conditions would mitigate defendant's safety threat to the community.

¶ 25                              III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 27 Affirmed.